1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    GABRIEL ECKARD,

9                                 Plaintiff,          Case No. C19-0579-JCC-MAT

10          v.

11   ALTA LANGDON, *et al*.,                          REPORT AND RECOMMENDATION

12                                Defendants.

13

14                  INTRODUCTION AND SUMMARY CONCLUSION

15          This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff, who is currently in

16   the custody of the Washington Department of Corrections, filed this action while confined at the

17   Snohomish County Jail ("Jail") in Everett, Washington. Plaintiff alleges in his amended complaint

18   that Defendants denied him necessary and appropriate mental health care during the course of his

19   confinement at the Jail.  (*See* Dkt. 18 at 3-6.) Plaintiff identifies as defendants in his amended

20   complaint Alta Langdon, the Health Services Administrator at the Jail, and Jacob Taylor, the

21   Mental Health Professional Lead at the Jail.  (*Id*. at 2.)  Plaintiff seeks declaratory and injunctive

22   relief, and damages.  (*Id*. at 6.)

23          Defendants have filed a motion for summary judgment which is currently ripe for review.

REPORT AND RECOMMENDATION - 1

(Dkt. 24.)  Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and has had ample opportunity to file a response, but has failed to do so.[1]  The Court, having reviewed plaintiff's amended complaint, defendants' motion for summary judgment, and the balance of the record, concludes that defendants' motion for summary judgment should be granted, and that plaintiff's amended complaint and this action should be dismissed with prejudice.

<u>BACKGROUND</u>

Plaintiff was booked into the Jail on September 4, 2018, on a felony warrant for charges of persistent prison misbehavior and harassment.[2]  (*See* Dkt. 18, ¶ 8; Dkt. 25, Ex. A at 1.) Plaintiff alleges in his amended complaint that he suffers from severe mental illness and that after being booked into the Jail he sought care for his illness but was denied medically necessary care.  (*See* Dkt. 18, ¶¶ 9, 10.)  More specifically, plaintiff complains that he was denied access to psychotherapy, to a psychiatric care provider, and to psychopharmaceuticals.  (*See id.*, ¶¶ 9, 10, 14 and Exs. A, B.)

Plaintiff claims that prior to his incarceration he received multiple diagnoses of serious mental illness, and that he was more recently diagnosed with a serious mental illness by Dr. Stuart Grassian, a psychiatrist and expert witness employed as a member of plaintiff's criminal defense team.  (*Id.*, ¶¶ 9, 14.)  Plaintiff maintains that Dr. Grassian's diagnosis calls for the administration of psychopharmaceuticals and psychotherapy.  (*Id.*)  Dr. Grassian's psychiatric evaluation report

---

[1]  Also pending at this time is a request by plaintiff for additional time to file a response to defendants' summary judgment motion.  The Court deems the requested extension unwarranted and has issued a separate Order denying the request.

[2]  Plaintiff was booked into the Jail immediately upon his release from prison, and he was transferred back into the custody of the Washington Department of Corrections in January 2020.  (*See* Dkt. 25, Ex. A at 1; Dkt. 43.)

REPORT AND RECOMMENDATION - 2

was submitted to the Court by plaintiff in conjunction with his motion for preliminary injunctive relief. (Dkt. 19.) The purpose of Dr. Grassian's report was not to identify deficiencies in plaintiff's mental health care, or even to recommend a course of treatment. Rather, as Dr. Grassian stated in the introduction to his report, the purpose of the report was "to help elucidate the relationship between [plaintiff's] psychiatric state and the disruptive behavior he has manifested during his imprisonment, with especial focus on the effects of his prolonged confinement in solitary confinement, and the likely impact of his being confined for Persistent Prison Misbehavior." (*Id.* at 4.)

Notably, while Dr. Grassian's report reflects the psychiatrist's opinion that plaintiff has manifested symptoms of a serious mental illness for years, and that plaintiff's functioning has been impaired by that illness, the report does not appear to suggest any specific treatment for the illness the psychiatrist believes to exist. (*See* Dkt. 19 at 4-35.) In particular, the report does not contain a recommendation for psychotherapy and, though the report references prior instances when plaintiff had been treated with psychiatric medications, the report does not contain any express recommendation for psychopharmaceuticals either. (*See* Dkt. 19 at 4-35.)

Defendants dispute plaintiff's contention that he requires psychotherapy and maintain that plaintiff has received necessary and appropriate care for his mental health needs. Defendant Langdon, in her declaration in support of defendants' summary judgment motion, states that she reviewed plaintiff's jail booking records and medical chart, and that the Jail healthcare team, at plaintiff's request, also reviewed over 100 pages of scanned documents outlining plaintiff's claimed mental disorder and other collateral records. (Dkt. 25, ¶ 6. *See also* Dkt. 18, ¶ 11.) Defendant Langdon further states that, in addition to the records review, she consulted with the medical doctor hired by Snohomish County to provide physician services to inmates, as well as

REPORT AND RECOMMENDATION - 3

with the contracted psychiatric mental health provider regarding plaintiff's treatment. (Dkt. 25, Ex. B, ¶ 6.) According to defendant Langdon, the mental health provider concluded that psychotherapy was not appropriate for plaintiff in the jail setting and the Jail healthcare team determined that plaintiff's medical records and evaluations supported the treatment he was receiving as sufficient for his medical and mental health care needs. (*Id*.)

It is not entirely clear what treatment plaintiff actually received during the course of his incarceration at the Jail. Defendants acknowledge that plaintiff sent multiple requests to the medical and mental health care staff seeking various treatments, including psychotherapy, for multiple subjective complaints, including his report of a mental health disorder. (*Id*., ¶ 7.) Defendant Langdon states that the medical and mental health staff evaluated plaintiff routinely during his incarceration and intervened to provide appropriate treatment in response to his requests. (*Id*.)

Defendant Langdon also explains the treatment modalities used by the mental health professionals at the Jail to respond to inmate mental health concerns, including Solution-Focused Brief Therapy and/or Critical Incident Stress Management, but she gives little indication of how, and to what extent, those interventions were used with plaintiff except to state that the corrections staff met plaintiff's medical and mental health needs "by interacting with him on a regular basis." (*Id*., ¶ 5.) It appears the Court is expected to infer from defendant Langdon's somewhat vague statements that the mental health staff, in their interactions with plaintiff, used the types of interventions described by defendant Langdon in her declaration which appear to include direct, but brief, interventions in response to specific problems with a focus on finding solutions to those problems while also evaluating the need for further supportive services and/or therapy. (*See id*., ¶ 5.)

REPORT AND RECOMMENDATION - 4

1    Finally, with respect to psychotherapy, defendant Langdon explains that such therapies

2    must be ongoing in a stable environment in order for the patient to receive any benefit and are

3    therefore contraindicated in the Jail setting given the short-term and transitory nature of the facility

4    and its population.  (*See id.*, ¶ 7.)

5                                                    DISCUSSION

6    Defendants argue in their motion for summary judgment that plaintiff's claims should be

7    dismissed because they were not deliberately indifferent to plaintiff's medical needs.  (Dkt. 24 at

8    5.)  In particular, defendants argue that plaintiff cannot demonstrate a need for psychotherapy,  that

9    psychotherapy is, in any event, impractical in a temporary setting such as pretrial detention, and

10   that plaintiff cannot demonstrate that the support provided to him at the Jail did not meet his needs.

11   (*Id.*)

12                                        Summary Judgment Standard

13   Summary judgment is appropriate when a "movant shows that there is no genuine dispute

14   as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

15   56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

16   to make a sufficient showing on an essential element of his case with respect to which he has the

17   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears

18   the initial burden of showing the district court "that there is an absence of evidence to support the

19   nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing

20   affirmative evidence that negates an essential element of the nonmovant's case, or by establishing

21   that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at

22   trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

23   The burden then shifts to the nonmoving party to establish a genuine issue of material fact.

REPORT AND RECOMMENDATION - 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a civil rights action, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was

REPORT AND RECOMMENDATION - 6

proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the complained of deprivation. *Id*. (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>Denial of Adequate Mental Health Care</u>

Plaintiff asserts in this action that he was denied necessary mental health care during the course of his pretrial confinement at the Snohomish County Jail. Plaintiff's rights therefore derive from the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Court applies a deliberate indifference standard in considering claims relating to medical and mental health care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010), *overruled in part on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016). A prisoner or pretrial detainee must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. A serious medical need exists if the failure to treat an inmate's condition "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

Pursuant to recent Ninth Circuit law, the Court evaluates a pretrial detainee's Fourteenth

REPORT AND RECOMMENDATION - 7

Amendment claim alleging a violation of the right to adequate medical or mental health care under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro*, 833 F.3d at 1070).[3]  A plaintiff must demonstrate that: (1) the defendant made an intentional decision with respect to conditions under which the plaintiff was confined; (2) the conditions put plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate the risk, "even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious;" and (4) by not taking such measures, the defendant caused plaintiff injury. *Id*. at 1125.

A "mere lack of due care" does not suffice to establish a constitutional violation. *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  A pretrial detainee "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id*. (quoting *Castro*, 833 F.3d at 1071).  *See also Estelle*, 529 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")  A difference of opinion between the inmate and medical authorities regarding proper treatment does not constitute deliberate indifference.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

The only information in the record speaking to the severity of plaintiff's mental health needs is the psychiatric evaluation report prepared by Dr. Grassian for purposes of plaintiff's criminal proceedings.  (DKt. 19 at 4-35.) Dr. Grassian stated in his report that plaintiff has "serious

---

[3]  Previously, "all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier*, 591 F.3d at 1242-43).

REPORT AND RECOMMENDATION - 8

mental illness" and that he has "consistently since childhood manifested symptoms of severe Bipolar Mood Disorder." (*Id*. at 4, 34.) It is unclear from defendants' motion papers whether plaintiff was ever diagnosed with any form of serious mental illness by Jail mental healthcare providers.[4] However, exhibits attached to plaintiff's amended complaint suggest an answer. In response to an inmate grievance submitted by plaintiff concerning his attempts to obtain medication for his mental health issues as well as other mental health services, defendant Taylor advised plaintiff that a review of his "chart and records" indicated that medication was not appropriate at that time (June 2019) because there was a lack of evidence that plaintiff's symptoms were "consistent with an acute mental disorder." (Dkt. 18, Ex. B at 2.) Defendant Taylor further advised that an appointment with the psychiatric ARNP was likewise not clinically indicated at that time. (*Id*.) This response suggests that the Jail healthcare team did not share Dr. Grassian's opinion that plaintiff suffered from a serious mental illness.

Assuming for purposes of this motion that plaintiff did have a serious mental health need, the Court must consider whether defendants were deliberately indifferent to that need. It is somewhat difficult to discern from defendants' evidence, which consists solely of the declaration of defendant Langdon, the precise nature and frequency of the mental health interventions provided plaintiff. Defendant Langdon states that the Jail healthcare team, which apparently includes the medical doctor who provides physician services to inmates, and the psychiatric mental health provider, determined that plaintiff's "medical records and evaluations support his current treatment as sufficient for his medical and mental health care needs." (Dkt. 25, Ex. B, ¶ 6.) She

---

[4] Defendants' assertion in their summary judgment motion that plaintiff "has not demonstrated a serious medical need exists for him to receive psychotherapy" (*see* Dkt. 24 at 7) is not particularly helpful in answering the more basic question of whether plaintiff was deemed to have any serious medical or mental health needs at all.

goes on to state that the medical and mental health staff evaluated plaintiff "routinely" during the course of his incarceration and "intervened to provide appropriate treatment in response to his requests." (*Id.*, ¶ 8.) Finally, defendant Langdon states that the corrections staff meets plaintiff's medical and mental health needs "by interacting with him on a regular basis." (*Id.*)

As noted above, defendant Langdon's statements in relation to the mental health care plaintiff received at the Jail are rather vague. However, plaintiff does not dispute that he received regular interventions in response to his requests for treatment, it appears only that he did not receive the type of interventions he believed were necessary, including psychotherapy and regular psychiatric care. Defendants' evidence establishes that psychotherapy was not deemed an appropriate type of therapy in the Jail setting and, indeed, was contraindicated. (Dkt. 25, Ex. B ¶¶ 6, 7.) The evidence also demonstrates that psychiatric care in general was not clinically indicated given plaintiff's symptoms. (*See* Dkt. 18, Ex. B at 2.) Plaintiff did, however, apparently receive regular mental health interventions. Plaintiff offers no evidence that the mental health interventions provided by the Jail were insufficient to meet his needs.

The Court notes as well that there is no evidence in the record that denying plaintiff access to the therapies he desired placed him at substantial risk of suffering serious harm or, in fact, caused him any injury. At the end of the day, the dispute here concerns nothing more than a difference of opinion regarding the type of care that was appropriate for plaintiff in the Jail setting and given his specific symptoms and needs. Such disputes do not implicate federal constitutional concerns. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claim that he was denied adequate mental health care.

To the extent plaintiff alleges in his amended complaint that the conditions of his confinement, in particular his long-term housing in solitary confinement, exacerbated his mental

REPORT AND RECOMMENDATION - 10

health issues (*see* Dkt. 18, ¶¶ 16, 17), he has not stated any viable claim for relief against the two defendants named in this action.  Defendants assert in their summary judgment motion that they do not make housing determinations and that plaintiff's housing status was based on a security assessment performed by Jail administration, not by them.  Plaintiff offers no evidence to the contrary and, thus, any claims pertaining to plaintiff's housing assignment at the Jail must be dismissed.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's amended complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21)** days of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 23, 2020**.

DATED this 29th day of September, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11